The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: _____**

**Filing Date: <u>July 25, 2023</u>**

**No. A-1-CA-39807**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**MICHAEL NIETO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**YOHALEM, Judge.**

{1}     A jury convicted Defendant Michael Nieto of battery upon a peace officer, contrary to NMSA 1978, Section 30-22-24 (1971); aggravated assault upon a peace officer (deadly weapon), contrary to NMSA 1978, Section 30-22-22 (1971); aggravated fleeing a law enforcement officer, contrary to NMSA 1978, Section 30-22-1.1 (2003, amended 2022); reckless driving, contrary to NMSA 1978, Section 66-8-113 (1987); resisting, evading or obstructing an officer (arrest), contrary to NMSA 1978, Section 30-22-1 (1981); and leaving the scene of an accident (property damage), contrary to NMSA 1978, Section 66-7-202 (1978), based on an encounter with police officers on June 16, 2019, in Albuquerque, New Mexico. The district court dismissed Defendant's reckless driving conviction on double jeopardy grounds. Defendant claims on appeal that several of his six remaining convictions are based on the same conduct and violate double jeopardy. Defendant also challenges the sufficiency of the evidence to support his conviction for leaving the scene of an accident. We agree that Defendant's convictions for resisting, evading or obstructing an officer and for aggravated fleeing a police officer violate double jeopardy and must be vacated. Otherwise, we affirm.

## BACKGROUND

{2} All of the charges in this case arose out of events that occurred on June 16, 2019. That morning, Albuquerque Police Officers Mares and Briones responded to a call about a man who was asleep behind the wheel of a pickup truck. That man was later identified as Defendant. Officer Mares arrived first and pulled up behind Defendant's truck. Officer Mares was in uniform, was driving a marked police vehicle, and his emergency lights were on. Leaving his vehicle with its emergency lights flashing, Officer Mares approached Defendant's pickup truck. Through the window, Officer Mares saw Defendant unconscious in the driver's seat. According to Officer Mares, Defendant "kind of pop[ped] up," and Officer Mares identified himself as a police officer. At that time, Officer Mares saw a handgun in the passenger seat. Officer Mares opened the driver's side door, grabbed and held one of Defendant's hands to his side, and told Defendant to step out of his truck. Defendant refused. By this time Officer Briones had arrived and was assisting Officer Mares. Officer Briones was able to take the gun from the passenger seat and place it on the hood of the truck, out of Defendant's reach.

{3} Officer Mares testified that, at that point, Defendant put the truck in drive, grabbed him, and pulled him into the truck. Defendant then accelerated and continued to drive for several miles with Officer Mares partially hanging out the door, clinging to the headrest to keep himself from falling to the road, until

Defendant's truck crashed head-on into another vehicle driven by Joaquin Sisneros and came to a stop, injuring Sisneros and damaging his car.

{4} Defendant threw Officer Mares out of his truck and began to run with Officer Mares chasing him. Defendant was tackled 25 to 50 feet away from the impact with Sisneros's vehicle in a Burger King parking lot, after having crossed over a couple of lanes of traffic, a sidewalk, and some landscaping.

**DISCUSSION**

**I.    Double Jeopardy**

{5} The double jeopardy clause "protects defendants from receiving multiple punishments for the same offense." *State v. Ramirez*, 2018-NMSC-003, ¶ 38, 409 P.3d 902 (internal quotation marks and citation omitted); *see* U.S. Const. amend. V; N.M. Const. art. II, § 15. Defendant raises what is known as a double description double jeopardy claim, "in which a single act results in multiple charges under different criminal statutes." *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289.

{6} In analyzing double description claims, we apply the two-part test set forth in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223, determining first: (1) whether the conduct underlying the offenses is unitary; and (2) if so, whether the Legislature intended to punish the offenses separately. *See State v. Begaye*, ___-NMSC-___, ¶ 13, ___ P.3d ___ (S-1-SC-38797, Jan. 12, 2023). "'Only

if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial.'" *Id.* (quoting *Swafford*, 1991-NMSC-043, ¶ 25.)

{7}     A defendant's conduct is unitary "if the acts are not separated by sufficient indicia of distinctness." *State v. Porter*, 2020-NMSC-020, ¶ 12, 476 P.3d 1201 (internal quotation marks and citation omitted). Our Supreme Court in *State v. Barrera*, 2001-NMSC-014, ¶ 36, 130 N.M. 227, 22 P.3d 1177 stated,

> The "indicia of distinctness" include the separation between the illegal acts by either time or physical distance, "the quality and nature" of the individual acts, and the objectives and results of each act. Distinctness may also be established by the existence of an intervening event, the defendant's intent as evinced by his or her conduct and utterances, the number of victims, and the behavior of the defendant between acts.

(internal quotation marks and citation omitted). In determining whether conduct is unitary, we consider "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227. If we determine that the conduct was not unitary, there is no double jeopardy violation and our analysis need not proceed further. If we determine, however, that the conduct was unitary, then we must proceed to the second inquiry: "whether the [L]egislature intended multiple punishments for the unitary conduct." *State v. Andazola*, 2003-NMCA-146, ¶ 15, 134 N.M. 710, 82 P.3d 77.

{8}     In answering this second question, we begin, as we always do when analyzing legislative intent, by looking to the plain language of the statute. *Begaye*, ___-

4

NMSC-___, ¶ 21. If the statute does not explicitly authorize multiple punishments, we next apply the *Blockburger* test. *Id.* ¶¶ 21-22. We use the strict-elements *Blockburger* test if the statutory language is clear and provides only a single alternative. If the statutory language is vague or states alternative bases for conviction, we use the modified *Blockburger* test. *Id.* Both *Blockburger* tests— strict-elements and modified—operate as "a kind of surrogate for construing legislative intent." *Id.* ¶ 22 (internal quotation marks and citation omitted). The strict-elements test is applied directly to clear statutory language to determine whether each statute requires proof of a fact that the other does not. *See State v. Silvas*, 2015-NMSC-006, ¶ 12, 343 P.3d 616 (describing the strict-elements *Blockburger* test).

{9} Where the statutory language serves multiple purposes and can be violated in multiple ways, we apply the modified *Blockburger* test and instead consider "whether the statute, *as applied by the* [*s*]*tate in a given case*, overlaps with the other criminal statutes so that the accused is being punished twice for the same offense." *Begaye*, ___-NMSC-___, ¶ 22 (internal quotation marks and citation omitted). We determine how a statute was applied by the state in a given case by looking first to the statutory language, the charging documents, and the jury instructions. *See id.* ¶¶ 25-26. If these sources, considered together, do not reveal the state's legal theory, we turn to the opening and closing statements and the evidence at trial to "establish

5

whether the same evidence supported" both convictions. *Id.* ¶ 26 (internal quotation marks and citation omitted). Our focus is to ascertain not simply whether the elements differ, "but whether the same evidence, that is, the same underlying conduct, is used to support both charges. *Id.* ¶ 28. If the same evidence supports both convictions, double jeopardy is violated and the lesser offense must be vacated. *See id.* ¶¶ 28, 36.

{10}   We apply these legal principles to each of the convictions challenged by Defendant as violating his right to be free of double jeopardy.

**A.   Defendant's Convictions for Battery Upon a Peace Officer and Aggravated Assault Upon a Peace Officer Do Not Violate Double Jeopardy**

{11}   We turn first to Defendant's argument that the conduct underlying his convictions for battery upon a peace officer and aggravated assault upon a peace officer is unitary and was not intended by the Legislature to be separately punished. We conclude that the conduct was not unitary and therefore, there is no double jeopardy violation.

{12}   In determining whether the conduct was unitary, we must determine whether the offenses were separated by sufficient indicia of distinctness by looking at (1) the temporal proximity of the acts, (2) the location of the victim during each act, (3) the existence of an intervening act, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by his conduct and utterances, and (6) the number of victims.

*See Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624; *see also Bernal*, 2006-NMSC-050, ¶¶ 15, 16 ("[W]e attempt to determine, based upon the specific facts of each case, whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent."); *State v. Barr*, 1999-NMCA-081, ¶¶ 15, 16, 127 N.M. 504, 984 P.2d 185 (recognizing that acts separated by sufficient indicia of distinctness warrant separate punishments). We consider whether the acts of a defendant were "performed independently of the other acts in an entirely different manner, or whether such acts were of a different nature." *State v. Boergadine*, 2005-NMCA-028, ¶ 21, 137 N.M. 92, 107 P.3d 532 (internal quotation marks and citation omitted).

{13} A conviction of battery on a peace officer requires the jury to find, in relevant part, that the defendant intentionally and unlawfully touched or applied force to the person of a peace officer in a rude, insolent, or angry manner. *See* § 30-22-24. In its instruction to the jury on battery on a peace officer and in closing argument, the State stated that it sought conviction solely on the basis that Defendant "intentionally touched or applied force to [Officer] Mares by grabbing his body and pulling on it," threatening the officer's safety or challenging his authority. To charge and prove aggravated assault on a peace officer, the State argued that Defendant drove in a manner that put Officer Mares in fear of being thrown to the road and injured.

{14} Defendant argues, based on this Court's decisions in *State v. Garcia*, 2009-NMCA-107, ¶ 17, 147 N.M. 150, 217 P.2d 1048, and *State v. Mares*, 1991-NMCA-052, ¶ 25, 112 N.M. 193, 812 P.2d 1341, that the conduct alleged occurred in one location, and close in time and sequence, and thus involved a single event that cannot be punished separately. We are not persuaded that *Garcia* and *Mares* are relevant to our analysis in this case. Both *Garcia* and *Mares* involve convictions of multiple batteries based on several blows of increasing severity delivered by a defendant to a single victim during a single escalating incident. *See Garcia*, 2009-NMCA-107, ¶ 6 (involving punching, pushing, and then stomping on the victim's leg during a fight between two inmates in the same cell); *Mares*, 1991-NMCA-052, ¶¶ 2-4 (involving punching, choking, pulling hair, and slapping of the victim in the car, on the ground, and in a nearby bush). Although it is true that the battery as described by the State was followed by the assault in what could be seen as an escalating sequence of events, we also must consider whether there are sufficient indicia of distinctness based on differences in "'the quality and nature' of the individual acts, and the objectives and results of each act." *Barrera*, 2001-NMSC-014, ¶ 36 (internal quotation marks and citation omitted). We conclude that there is a significant difference in the "quality and nature" of an act of physically touching an officer, using enough force to pull his body into a truck—the battery established by the State here—and causing the officer, by driving recklessly, to fear falling to the road and

being injured. The battery happened at the location of the original encounter between Defendant and police, and the assault began as Defendant accelerated away and continued as Defendant drove recklessly, apparently trying to rid himself of Officer Mares and avoid arrest.

{15}    Based on these distinctions, we hold that the conduct underlying Defendant's convictions was not unitary and, therefore, we need not reach the second part of the double jeopardy analysis. *See Begaye*, ___-NMSC-___, ¶ 13; *see also Swafford*, 1991-NMSC-043, ¶ 38.

**B.    Defendant's Convictions for Aggravated Fleeing a Law Enforcement Officer and Resisting, Evading or Obstructing an Officer Violate Double Jeopardy**

{16}    Defendant argues that his convictions for resisting, evading or obstructing an officer and aggravated fleeing from an officer are based on unitary conduct, and that resisting, evading or obstructing an officer, under the State's legal theory, is a lesser included offense subsumed within aggravated fleeing, violating double jeopardy. We agree.

{17}    We understand the State's argument on appeal to be that the jury could have based the conviction for resisting, evading or obstructing an officer on Defendant's conduct in continuing to flee Officer Mares on foot after Defendant's truck was brought to a stop by the collision with Sisneros's vehicle. The State claims that Defendant's flight from Officer Mares in a motorized vehicle and his subsequent

flight on foot are separate and distinct incidents of fleeing an officer, and are not unitary conduct for double jeopardy purposes. *See Sena,* 2020-NMSC-011, ¶ 54 (allowing the state to presume that the jury relied on different conduct to convict a defendant of each crime if the record indicates there was separate and distinct conduct).

{18} Even assuming that the jury relied on Defendant's conduct in fleeing on foot from Officer Mares to convict Defendant of resisting, evading or obstructing an officer, we do not agree that this conduct was separate and distinct from Defendant's conduct in fleeing from Officer Mares by motor vehicle. Defendant relies on our decision in *State v. Padilla*, 2006-NMCA-107, 140 N.M. 333, 142 P.3d 921, *reversed on other grounds*, 2008-NMSC-006, 143 N.M. 310, 176 P.3d 299, to argue that there are insufficient indicia of distinctness between a defendant's fleeing in a motor vehicle, and then continuing that same flight from the same officer on foot. In a situation virtually identical to this one, this Court held that "it is artificial to parse conduct when a suspect flees from the police in one way and then immediately continues to flee in another way." *Id.* ¶ 30; *see State v. French*, 2021-NMCA-052, ¶ 19, 495 P.3d 1198 (reaching the same result). Seeing no reason to deviate from this established precedent, we agree with Defendant that Defendant's flight from police was unitary.

10

{19} Because all of the elements of resisting, evading or obstructing an officer by fleeing Officer Mares on foot are subsumed within the greater offense of aggravated fleeing an officer, Defendant's conviction of both violates double jeopardy and his conviction for resisting, evading or obstructing an officer must be vacated.

**C.      Defendant's Convictions for Leaving the Scene of an Accident and Aggravated Fleeing a Law Enforcement Officer Do Not Violate Double Jeopardy**

{20} Defendant contends that his conviction for leaving the scene of an accident is subsumed within his conviction for aggravated fleeing a law enforcement officer. We assume, without deciding, that much like Defendant's conviction for resisting, evading or obstructing a law enforcement officer, his conviction for leaving the scene of an accident relies on Defendant's conduct in running from Officer Mares and the accident scene and is therefore unitary conduct. We next consider whether the Legislature intended to permit dual convictions. *See Begaye*, ___-NMSC-___, ¶ 20.

{21} Our Supreme Court in *Begaye* directs us to first consider whether the Legislature has explicitly stated an intent to allow multiple punishments. Neither of the statutes at issue here includes such language. *See* § 30-22-1.1 (defining aggravated fleeing); § 66-7-202 (defining leaving the scene of an accident). We look next to whether these statutes are vague or can be violated in multiple ways. Because both aggravated fleeing an officer and leaving the scene of an accident can be

11

committed in many ways, these statutes are vague and we, therefore, apply the modified *Blockburger* test. In applying that test, we compare the conduct the State relied on to prove aggravated fleeing a law enforcement officer and the conduct the State relied on to prove leaving the scene of an accident.

{22} We conclude that the conduct necessary to prove aggravated fleeing as presented by the State and argued to the jury, includes conduct different from the conduct necessary to prove the crime of leaving the scene of an accident. Proof of aggravated fleeing a peace officer in this case required that the State establish that Defendant fled arrest by Officer Mares in a way that endangered the officer. Leaving the scene of an accident, in contrast, required the State to establish that Defendant was involved in an accident that damaged another vehicle and injured its occupant; that Defendant ran from the scene, failing to stop or immediately return; and that Defendant did not satisfy his obligations under the statute to assist the other driver. *See* § 66-7-202; NMSA 1978, § 66-7-203 (1978). The State was thus required under its theory of the case to present proof of conduct for each crime that was different and distinct from the conduct required under the State's theory to establish the other crime. We, therefore, presume the Legislature intended multiple punishments. There is no double jeopardy violation.

**D.** **Defendant's Convictions for Aggravated Assault Upon a Peace Officer and Aggravated Fleeing a Law Enforcement Officer Violate Double Jeopardy**

{23} Defendant contends that the conduct underlying his convictions for aggravated assault upon a peace officer and aggravated fleeing a law enforcement officer was unitary, and that the Legislature did not intend to punish the two crimes separately. According to Defendant, the State's theory of the case relied for both convictions on proof that Defendant drove recklessly with Officer Mares hanging out of his truck, with the common intention of ejecting the officer from the truck. The charging documents, the jury instructions, and the State's closing argument support Defendant's position that the State relied on the same conduct by Defendant as the basis for both its charge of aggravated fleeing Officer Mares and aggravated assault on Officer Mares. The State's briefing does not meaningfully distinguish Defendant's conduct in fleeing from Defendant's conduct in assaulting Officer Mares. We therefore agree that the conduct was unitary.

{24} We proceed to the second part of the analysis, in which we ask "whether the Legislature intended to permit multiple punishments" for this unitary conduct, violating separate statutes. *Begaye*, \_\_\_\_-NMSC-\_\_\_\_, ¶ 21 (internal quotation marks and citation omitted). Looking first to the language of the two statutes, aggravated assault and aggravated fleeing, neither addresses whether multiple punishments are permitted. *See* §§ 30-22-1.1, -22. We next turn to the *Blockburger*

13

test. *See Begaye*, ____-NMSC-____, ¶¶ 21-22. Both of these statutes can be violated in multiple ways so we apply the modified *Blockburger* test, looking to the State's theory of the case to determine whether one offense subsumes the other. *See id.* ¶ 24. Although aggravated fleeing a law enforcement officer can involve proving that Defendant endangered the public by driving recklessly, the State in this case relied on the danger to Officer Mares created by Defendant's reckless driving as the officer hung partially out of Defendant's vehicle to prove aggravated fleeing. This was exactly the same conduct the State relied on to prove aggravated assault on a peace officer with a deadly weapon. The deadly weapon described by the State to the jury was the Defendant's truck, and the deadly force Officer Mares feared was being thrown from Defendant's truck onto the roadway as Defendant twisted and turned the vehicle in an effort to get free of Officer Mares and avoid arrest. Although aggravated fleeing a law enforcement officer requires the State to also prove that Defendant "had been given an audible signal to stop by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle," an additional element does not prevent an offense from subsuming or being subsumed in another offense. *See id.* ¶ 35 (explaining that a defendant's double jeopardy rights are violated even though one of the counts requires proof of an additional element).

{25} Therefore, under the modified *Blockburger* test, given the theory of the case advanced by the State, we conclude that our Legislature did not intend to allow

14

separate punishment for these two offenses. The conviction for aggravated assault on a peace officer is the greater offense, and so that conviction stands and the conviction for aggravated fleeing a law enforcement officer must be vacated.

**II.     Sufficient Evidence in the Record Supports Defendant's Conviction for Leaving the Scene of an Accident**

{26}     Defendant also argues the evidence was insufficient to support his conviction for leaving the scene of an accident. Defendant claims that, because Officer Mares tackled him, he never got far enough away to be convicted of having "left the scene of an accident." Defendant relies on our Supreme Court's decision in *State v. Almanzar*, 2014-NMSC-001, 316 P.3d 183. In response, the State argues that *Almanzar* was rooted in a policy to protect victims of domestic violence by allowing officers to arrest a perpetrator who had left the immediate location of the violence, but remained nearby, and that our Legislature had different policy considerations in referring to the scene of an accident in Section 66-7-202. We agree with the State.

{27}     "[W]e apply a substantial evidence standard to review the sufficiency of the evidence at trial." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891. In doing so, we determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 (emphasis, internal quotation marks, and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and

15

resolving all conflicts in the evidence in favor of the verdict." *Id.* "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Garcia*, 2016-NMSC-034, ¶ 17, 384 P.3d 1076 (alteration, internal quotation marks, and citation omitted). To convict Defendant of leaving the scene of an accident, the jury was instructed in relevant part, that the State must prove "[D]efendant did not immediately stop, did not return to and did not remain at the scene of the accident." *See* § 66-7-202.

{28} We first address Defendant's argument that we should rely on *Almanzar*'s definition of "at the scene" to construe leaving "the scene" of an accident. In *Almanzar*, under NMSA 1978, Section 31-1-7(A) (1995), addressing a domestic violence incident, our Supreme Court applied a test of reasonableness for considering whether an officer is "at the scene" for purposes of making a warrantless arrest. *Almanzar,* 2014-NMSC-001, ¶ 20. *Almanzar*'s holding is based on policy considerations of protecting victims of domestic violence from aggressors who are still close enough to reinitiate violence against the victim. *See id.* ¶ 21. In contrast, the policy considerations that led to prohibiting a driver from leaving the scene of an accident were "to prohibit drivers from evading criminal or civil liability, to ensure people receive necessary aid or medical attention, and to deter drivers from thwarting or impeding investigations and avoiding liability for the harm they cause by failing to stop or failing to comply with Section 66-7-203 [to render aid]." *State*

16

*v. Montelongo Esparza*, 2020-NMCA-050, ¶ 13, 475 P.3d 815 (internal quotation marks and citation omitted). Because the purposes served are different from the purposes of the domestic violence statute at issue in *Almanzar*, we do not apply the same test.

{29} Here, the jury's task was to determine whether Defendant had fulfilled the requirements of the statute or intended to return and fulfill them. Defendant's testimony stating, "I was trying to flee the scene," along with the evidence of the distance he ran before being tackled by an officer was sufficient to enable a reasonable jury to infer that Defendant had left the scene of the accident without fulfilling his statutory duty to provide reasonable assistance to the other driver. *See* § 66-7-202 (requiring a person to remain at the scene until the requirements of Section 66-7-203 are fulfilled.).

**CONCLUSION**

{30} We vacate Defendant's convictions for resisting, evading or obstructing a law enforcement officer and for aggravated fleeing a peace officer, and remand for resentencing. Otherwise, we affirm.

{31} **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____
**ZACHARY A. IVES, Judge**

_____
**KATHERINE A. WRAY, Judge**

18