# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2024-NMCA-074**

**Filing Date: August 5, 2024**

**No. A-1-CA-39780**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**MICHAEL ARGUELLO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Melissa A. Kennelly, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**ATTREP, Chief Judge.**

**{1}** Following a bench trial, Defendant Michael Arguello was convicted of driving under the influence of intoxicating liquor (DUI), impaired to the slightest degree, (NMSA 1978, § 66-8-102(A) (2016)) and careless driving (NMSA 1978, § 66-8-114(B) (1969)). On appeal, Defendant (1) contends various evidentiary errors occurred at his trial and the combination of these errors amount to cumulative error; (2) argues his convictions are not supported by sufficient evidence; and (3) challenges his convictions on double jeopardy grounds. Based on the district court's findings of fact, it is evident that the district court relied on the same evidence to convict Defendant of both careless driving

and DUI. Defendant's conduct accordingly was unitary and his careless driving conviction was subsumed within his DUI conviction. We thus hold that Defendant's convictions for careless driving and DUI violate double jeopardy, reverse the careless driving conviction, and remand to the district court to vacate the same. We otherwise affirm.

**BACKGROUND**

**{2}** The district court relied on the following evidence to convict Defendant of careless driving and DUI. On the evening in question, Defendant turned a corner in his white truck at an intersection in Raton, New Mexico. Christopher Montoya was riding his bicycle on the corner and cried out to the driver of the truck that the truck had struck him. A witness, Fabian Acevedo, was stopped at the same intersection. Hearing Montoya cry out, Acevedo turned to look, observing the white truck rounding the corner and Montoya lying on the ground next to his overturned bicycle. Acevedo reversed his vehicle to catch up with the white truck, and told Defendant that he had struck someone. Defendant responded by saying that he thought he had hit a dog. Defendant returned to the scene. A 911 call was placed, and Officer John Rodarte responded. Officer Rodarte spoke with Montoya, who stated that a white truck turned the corner and drove over the curb, striking him. It is undisputed that Defendant was the driver of the white truck. Officer Rodarte testified that he inspected Defendant's truck and observed weeds sticking out of the bumper at the same approximate height as the weeds lining the corner of the intersection.

**{3}** Officer Rodarte further testified that he observed Defendant's eyes to be bloodshot and that he smelled alcohol on Defendant's breath. Officer Rodarte administered field sobriety tests to Defendant, beginning with the nine-step walk-and-turn test, which Officer Rodarte explained and demonstrated. Defendant stated that he understood the instructions, and indicated that he had no medical issues that would affect his performance. During the test, Defendant exhibited several "clues" demonstrating potential intoxication. Although Officer Rodarte could not recall with specificity which clues Defendant exhibited, the officer's body camera footage showed that Defendant made several mistakes—i.e., he exhibited balance issues, took eight steps instead of nine, turned the wrong direction, occasionally relied on his arms for balance rather than keeping them at his sides, and had to ask for the instructions to be repeated halfway through the test. Although Defendant then told Officer Rodarte that he often experienced vertigo and had a screw in his foot, and should therefore be excused from performing a one-leg stand test, Defendant testified at trial that he was not experiencing vertigo while performing the field sobriety tests. The district court adjudicated Defendant guilty of careless driving and DUI, and issued extensive findings of fact and conclusions of law explaining the basis for these convictions.

**DISCUSSION**

**I.     Evidentiary Claims of Error**

**{4}** Defendant contends the district court erred in its evidentiary rulings related to certain out-of-court statements made by Montoya, who passed away prior to trial from events unrelated to this case.

## A. Admission of Montoya's Statements

**{5}** Defendant first challenges the admission of Montoya's out-of-court statements to Officer Rodarte. At trial, and over defense counsel's objections, the district court permitted Officer Rodarte to testify to statements Montoya made to him at the scene. According to Officer Rodarte, Montoya stated that he was riding his bicycle when he was struck by a white truck that jumped the curb while turning the corner at the intersection. After further investigation, Officer Rodarte determined the truck was Defendant's. Defendant argues that the district court's admission of Montoya's statements to Officer Rodarte was error on two grounds—first, that it violated Defendant's rights under the Confrontation Clause of the United States Constitution, and second, that it did not qualify under the excited utterance exception to the rule against hearsay. Assuming without deciding that the district court erred on both grounds, we nevertheless affirm because the purported error was harmless.

**{6}** Because constitutional error is examined using a higher standard than non-constitutional error, we apply the constitutional harmless error standard in our analysis. *See State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110 ("[I]t is appropriate to review non-constitutional error with a lower standard than that reserved for our most closely held rights, and therefore reviewing courts should only conclude that a constitutional error is harmless when there is no reasonable *possibility* it affected the verdict. By comparison, a non-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict. . . . [T]he reasonable possibility standard continues to resemble the reasonable doubt standard while the reasonable probability standard requires a greater degree of likelihood that a particular error affected a verdict." (alteration, internal quotation marks, and citations omitted)). "The [s]tate has the burden of establishing that the constitutional error was harmless beyond a reasonable doubt." *State v. Gutierrez*, 2007-NMSC-033, ¶ 18, 142 N.M. 1, 162 P.3d 156 (internal quotation marks and citation omitted). "[A] constitutional error is harmless when there is no reasonable *possibility* it affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (alteration, internal quotation marks, and citation omitted). The likely effect of a constitutional error is determined on a case-by-case basis by considering, among other things, the emphasis placed on the error, evidence of a defendant's guilt apart from the error, the importance of the improperly-admitted evidence, and whether the erroneously-admitted evidence introduced new facts or was merely cumulative. *Id*. ¶ 43.

**{7}** Assuming it was error to admit into evidence Montoya's statements to Officer Rodarte, we agree with the State that any such error was harmless. Montoya's statements were cumulative of other evidence and were corroborated by other witnesses on all material points. *See State v. Johnson*, 2004-NMSC-029, ¶¶ 11, 39, 136 N.M. 348, 98 P.3d 998 (examining the cumulative versus corroborative nature of improperly-admitted evidence and providing that "[t]he probative force—and therefore

the possible prejudicial effect—of a particular piece of evidence tends to decrease the more redundant that evidence is in the context of other similar evidence"). For instance, Acevedo, who was parked at the intersection in question, testified that he heard Montoya accusatorily cry out to the white truck that he had been struck, and then Acevedo immediately observed the white truck rounding the corner and Montoya lying on the ground next to his overturned bicycle. Acevedo further testified that upon informing Defendant he may have struck a person, Defendant stated he thought he had hit a dog, thereby conceding that he had hit *something*. Additionally, Officer Rodarte testified that he observed tall weeds within Defendant's front bumper, tending to show that the truck left the traveled portion of the roadway.

{8}     Additionally, as set out in the background section, there was ample evidence of Defendant's guilt for both the careless driving and DUI convictions separate and apart from Montoya's statements to Officer Rodarte. *See State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215 ("To put the error in context, we often look at the other, non-objectionable evidence of guilt, not for a sufficiency-of-the-evidence analysis, but to evaluate what role the error played at trial."). The overall unimportance of Montoya's statements to the verdict also is borne out in the district court's findings of fact. *Cf. State v. Ortega*, 2014-NMSC-017, ¶ 22, 327 P.3d 1076 (examining the importance of the erroneously-admitted evidence to the state's case). In fact, Defendant concedes in his brief in chief that the district court placed little, if any, emphasis on Montoya's statements in determining guilt. As Defendant correctly observes, even though Montoya stated that he was struck by the white truck, the district court "did not actually find that [Defendant] struck . . . Montoya. Instead, the court found that . . . Montoya 'was riding his bicycle on or alongside the roadway' and that [Defendant] 'either struck . . . Montoya on his bicycle or came so close to him so as to cause . . . Montoya to fall off of his bicycle.'" Nor did the district court rely on Montoya's statements in determining that Defendant drove over the curb, finding instead that "Defendant left the traveled portion of the roadway . . . as evidenced by the weeds sticking out of Defendant's right front bumper along with the presence of tall weeds alongside the roadway."

{9}     In sum, given the other evidence of Defendant's guilt, the lack of reliance by the district court on Montoya's statements, and their cumulative nature, we conclude that there is no reasonable possibility that their admission affected the verdict. *See Tollardo*, 2012-NMSC-008, ¶ 36. The error, if any, was harmless.

## B.     Exclusion of Impeachment Testimony

{10}    Next, Defendant argues that the district court wrongly excluded testimony tending to demonstrate Montoya's motivation to lie. We reject this argument as unpreserved.

{11}    During redirect of Defendant, defense counsel asked Defendant if he was aware of any reason why Montoya would lie about being struck. Defendant responded, "Money. That's the only thing I can figure." After the State successfully objected on grounds of speculation, the district court asked defense counsel to lay a foundation for Defendant's knowledge. Counsel then asked Defendant if Montoya had ever asked him

for money in exchange for a promise to settle the case. When the State objected on hearsay grounds, defense counsel responded,

> Well, your Honor, that was my objection to when the State was trying to introduce this testimony. So I'd have to rely on the court's earlier ruling about the admission. . . . I agree that it is [hearsay], but with that said, the State opened the door, and asked for that to be admissible.

The district court explained that it previously had admitted Montoya's statements to Officer Rodarte as an excited utterance and asked counsel whether he could lay a foundation for the particular statements he was seeking to have considered. Defense counsel responded, "The exception wouldn't rely on the excited utterance, it would go to motive or intent." After the State observed that "motive or intent" is not a hearsay exception, the district court sustained the objection. Defense counsel made no further argument.

**{12}**    On appeal, Defendant concedes that defense counsel's "argument that the statements went to 'motive or intent,' does not invoke a hearsay exception." Nevertheless, Defendant argues, the district court erred because the statements Defendant sought to have considered were non-hearsay because they were not offered for the truth of the matter asserted but instead to show Montoya's financial motivation to lie. Defendant further claims that defense counsel's reference to "motive or intent" preserved an objection that the statements were non-hearsay. We disagree. At no point did defense counsel argue that Montoya's purported statements to Defendant were not hearsay. Instead, defense counsel *explicitly agreed* with the State that they *were* hearsay and sought to have the district court rule that "motive or intent" was an exception to the rule against hearsay. Although we "do not apply the preservation requirement in an unduly technical manner," *In re Est. of Baca*, 1999-NMCA-082, ¶ 15, 127 N.M. 535, 984 P.2d 782 (internal quotation marks and citation omitted), it is necessary for the issue advanced on appeal to have been raised before the trial court with enough specificity to "apprise[] the trial court of the nature of the claimed error and invoke[] an intelligent ruling thereon," *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (internal quotation marks and citation omitted). Here, Defendant failed to raise the claim of error he now asserts on appeal. *See* Rule 12-321(A) NMRA; *see also State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)); *State v. Lucero*, 1986-NMCA-085, ¶¶ 9-11, 104 N.M. 587, 725 P.2d 266 (holding that the defendant's general hearsay objections pertaining to foundation did not preserve the argument on appeal that testimony did not fall within a specific hearsay exception).

**{13}**    Because Defendant's claim of error was not preserved and Defendant has not argued that any exceptions to the preservation rule apply here, *see* Rule 12-321(B), we give this claim of error no further consideration. *See State v. Druktenis*, 2004-NMCA-032, ¶ 122, 135 N.M. 223, 86 P.3d 1050 ("[G]enerally, [we] will [not] address issues not

preserved below and raised for the first time on appeal."); *State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787 (stating that courts normally do not review for fundamental or plain error when not requested by the appellant).

## C.    Cumulative Error

{14}    Defendant argues that the district court's erroneous admission of Montoya's statements to Officer Rodarte, coupled with the district court's erroneous exclusion of testimony tending to impeach Montoya, constituted cumulative error. "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Salas*, 2010-NMSC-028, ¶ 39, 148 N.M. 313, 236 P.3d 32 (internal quotation marks and citation omitted); *see id.* ("In New Mexico the doctrine of cumulative error is strictly applied. It cannot be invoked when the record as a whole demonstrates that the defendant received a fair trial." (internal quotation marks and citation omitted)). Because we have concluded that Defendant's latter claim of error was not preserved and his former was harmless, there is no error to accumulate, and we therefore reject Defendant's claim of cumulative error. *See State v. Carrillo*, 2017-NMSC-023, ¶ 53, 399 P.3d 367 ("Because we find only one error at trial, an error which was harmless, we reject [the d]efendant's cumulative error claim."); *State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 ("Where there is no error to accumulate, there can be no cumulative error." (alteration, internal quotation marks, and citation omitted)).

## II.    Sufficiency of the Evidence

{15}    Defendant contends there is insufficient evidence to support his convictions for careless driving and DUI. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Guerra*, 2012-NMSC-027, ¶ 10, 284 P.3d 1076 (internal quotation marks and citation omitted). When evaluating whether a conviction is supported by sufficient evidence, we view the evidence in the light most favorable to the verdict by "resolv[ing] all disputed facts in favor of the [s]tate, indulg[ing] all reasonable inferences in support of the verdict, and disregard[ing] all evidence and inferences to the contrary." *See State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). This means, as the reviewing court, "we do not reweigh the evidence or attempt to draw alternative inferences from the evidence," *State v. Estrada*, 2001-NMCA-034, ¶ 41, 130 N.M. 358, 24 P.3d 793; nor do we "substitute our judgment for that of the factfinder concerning the credibility of witnesses or the weight to be given their testimony," *State v. Nichols*, 2006-NMCA-017, ¶ 9, 139 N.M. 72, 128 P.3d 500 (internal quotation marks and citation omitted). For the reasons that follow, we conclude that sufficient evidence supports both of Defendant's convictions.

## A.    Careless Driving

**{16}** A person commits the misdemeanor of careless driving if they "operate[] a vehicle in a careless, inattentive or imprudent manner, without due regard for the width, grade, curves, corners, traffic, weather and road conditions and all other attendant circumstances." Section 66-8-114(B); *see* UJI 14-4505(2) NMRA; *see also State v. Yarborough*, 1996-NMSC-068, ¶ 21, 122 N.M. 596, 930 P.2d 131 (providing that a conviction for careless driving "requires only a showing of ordinary or civil negligence," not criminal negligence).

**{17}** The district court convicted Defendant of careless driving, finding that Montoya was riding his bicycle "on or alongside the roadway" and that Defendant "either struck . . . Montoya on his bicycle or came so close to him so as to cause [him] to fall off of his bicycle onto the roadway." Defendant's principal argument is that these findings reasonably allow for the conclusion that he was driving safely along the roadway, and that Montoya was simply startled by the passing truck. We disagree.

**{18}** Defendant's argument is contradicted by the district court's own findings. Specifically, the district court found that Defendant's driving "cause[d] . . . Montoya to fall off of his bicycle onto the roadway," and that Defendant "left the traveled portion of the roadway when he struck or almost struck . . . Montoya." Moreover, Defendant's argument is contrary to our standard of review. "On appeal, a reviewing court liberally construes findings of fact adopted by the fact finder in support of a judgment, and such findings are sufficient if a fair consideration of all of them taken together supports the judgment entered below." *Toynbee v. Mimbres Mem'l Nursing Home*, 1992-NMCA-057, ¶ 16, 114 N.M. 23, 833 P.2d 1204. Taking all of the district court's findings of fact together, it is evident the district court determined that it was Defendant's poor driving—and not Montoya's fright, as Defendant suggests—that caused Mr. Montoya to fall from his bicycle.

**{19}** In further support of his sufficiency challenge, Defendant questions the credibility of certain testimony—specifically, Officer Rodarte's ability to identify the weeds within Defendant's bumper as the same as those from the scene. Defendant also points to other evidence suggesting that he was not driving carelessly—i.e., the lack of damage to Montoya's bicycle, the lack of injuries sustained by Montoya, and Acevedo's assessment that Defendant was driving normally when he returned to the scene. Defendant's argument again runs afoul of our standard of review. When determining whether a conviction is supported by sufficient evidence, we defer to the fact finder on matters of credibility and the weight given to evidence, we do not reweigh the evidence, and we disregard all evidence and inferences that contravene the verdict. *See Largo*, 2012-NMSC-015, ¶ 30; *Estrada*, 2001-NMCA-034, ¶ 41; *Nichols*, 2006-NMCA-017, ¶ 9. Applying this standard, we conclude that ample evidence supports Defendant's careless driving conviction.

## B. DUI

**{20}** Defendant was convicted of DUI under the "impaired to the slightest degree" standard. *See* § 66-8-102(A) ("It is unlawful for a person who is under the influence of

intoxicating liquor to drive a vehicle within this state."). Under that standard, a defendant is guilty of DUI if they "operated a motor vehicle" and "as a result of drinking liquor the defendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public." UJI 14-4501 NMRA.

**{21}** On appeal, Defendant argues that there was insufficient evidence to prove impairment, citing evidence of his sobriety and otherwise construing the evidence in his favor. Defendant's argument in this regard is unavailing because, again, our standard of review requires that we view the evidence in the light most favorable to the verdict, disregarding all contrary evidence, and that we not draw alternative inferences from the evidence. *See Largo*, 2012-NMSC-015, ¶¶ 30, 35; *Estrada*, 2001-NMCA-034, ¶ 41.

**{22}** Defendant further disputes the district court's findings regarding his performance on the walk-and-turn test, arguing they are unsupported by sufficient evidence. Specifically, Defendant contends that "the record does not support a finding that [Defendant] *did not* experience vertigo during the tests." At best, there is conflicting evidence in the record regarding whether Defendant was suffering from vertigo at the time,[1] and we defer to the district court's resolution of such conflicting evidence. *See State v. Goss*, 1991-NMCA-003, ¶ 20, 111 N.M. 530, 807 P.2d 228 ("[T]he trial court as the fact finder was empowered to weigh the evidence, determine the credibility of the witnesses, and resolve any conflicts in the evidence."). Next, Defendant asserts, "[A]bsent law enforcement testimony specifying how [Defendant's] performance on the walk-and-turn test might indicate impairment, there was insufficient evidence to find that it does." Defendant, however, cites no authority for this proposition; we therefore assume none exists and we need not give this argument further consideration. *See, e.g.*, *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (providing that "appellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists"). Nonetheless, Defendant's assertion does not align with our research on the matter. *See State v. Pickett*, 2009-NMCA-077, ¶ 21, 146 N.M. 655, 213 P.3d 805 (providing that where behavior exhibited during a field sobriety test is sufficient to lead a layperson to believe a person is intoxicated, specific testimony regarding the technical "clues" themselves is unnecessary for a finding of impairment).

**{23}** In sum, we reject Defendant's attacks on his DUI conviction and, reviewing the evidence in the light most favorable to the verdict, we conclude that sufficient evidence supports this conviction. *See, e.g.*, *State v. Nevarez*, 2010-NMCA-049, ¶¶ 34, 36, 148

---

1The record reveals that, prior to Defendant taking the walk-and-turn test, Defendant told Officer Rodarte that he did not have any conditions that would affect his ability to walk, turn, or stand. Defendant then performed the walk-and-turn test with obvious difficulty and without following all of the instructions. Officer Rodarte proceeded to the one-leg stand test. When asked whether there were any conditions that would prevent Defendant from performing this test, Defendant replied that he had vertigo and a screw in his foot. As a result, Officer Rodarte did not administer the one-leg stand test. Furthermore, at trial, Defendant testified that he was able to do the walk-and-turn test and believed he did so correctly. When asked by the district court whether he was experiencing vertigo at the time of the field sobriety tests, Defendant responded, "No, I just didn't want to do the one-leg stand test."

N.M. 820, 242 P.3d 387 (finding that evidence was sufficient to justify a DUI conviction where the defendant drove his car recklessly at a high rate of speed, had bloodshot and watery eyes, smelled of alcohol, admitted to having consumed beer, and failed to adequately perform field sobriety tests as demonstrated by his lack of balance and inability to follow instructions); *State v. Neal*, 2008-NMCA-008, ¶ 29, 143 N.M. 341, 176 P.3d 330 (finding sufficient evidence of DUI where the defendant "veer[ed] over the shoulder line three times, [the d]efendant smelled of alcohol and had bloodshot and water eyes, [the d]efendant admitted drinking, [the d]efendant showed signs of intoxication during the field sobriety tests, . . . and the officer believed [the d]efendant was under the influence of alcohol").

## III.    Double Jeopardy

{24}    Finally, we address Defendant's argument that his careless driving and DUI convictions violate double jeopardy. Defendant contends that the district court relied on the same conduct—Defendant's poor driving involving Montoya—to convict him under both the careless driving and DUI statutes and, as a result, Defendant's careless driving was subsumed within the crime of DUI. For the reasons that follow, we agree.

{25}    Defendant's double jeopardy challenge presents a constitutional question of law, which we review de novo. *See State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. The double jeopardy clause "protects defendants from receiving multiple punishments for the same offense." *State v. Ramirez*, 2018-NMSC-003, ¶ 38, 409 P.3d 902 (internal quotation marks and citation omitted); *see* U.S. Const. amend. V; N.M. Const. art. II, § 15. Defendant raises a double-description double jeopardy claim, "in which a single act results in multiple charges under different criminal statutes." *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. "The pivotal question in multiple punishment cases is whether the defendant is being punished twice for the same offense." *Swafford v. State*, 1991-NMSC-043, ¶ 8, 112 N.M. 3, 810 P.2d 1223 (emphasis omitted). To answer this question in a double-description challenge, such as Defendant's, we employ the two-part test, set out in *Swafford*, in which we examine: (1) whether the conduct is unitary, and, if so, (2) whether the Legislature intended to punish the offenses separately. *Id.* ¶¶ 9, 25. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.* ¶ 25. We address the *Swafford* prongs in turn.

## A.    Unitary Conduct

{26}    We first must answer whether the "conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes." *State v. Begaye*, 2023-NMSC-015, ¶ 20, 533 P.3d 1057 (internal quotation marks and citation omitted). "A defendant's conduct is unitary if the acts are not separated by sufficient indicia of distinctness." *Id.* (internal quotation marks and citation omitted). In the typical case—where the convictions are the result of guilty verdicts and the factual bases for the convictions are unknown because the fact finder issues general verdicts—we resolve the unitary conduct question by considering "whether the facts presented at trial establish that the

[fact finder] *reasonably could have inferred* independent factual bases for the charged offenses." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (emphasis added) (internal quotation marks and citation omitted); *see also State v. Phillips*, 2024-NMSC-009, ¶ 41, 548 P.3d 51 (rejecting the reasonable fact finder standard where one of the convictions was based on a guilty plea and not a jury verdict). In this case, however, the district court made extensive findings of fact to support Defendant's convictions. We thus are in the rare position to know definitively the factual basis for each of Defendant's convictions and whether the conduct underlying Defendant's convictions was unitary. *Cf. State v. Crain*, 1997-NMCA-101, ¶ 22, 124 N.M. 84, 946 P.2d 1095 (examining, in the context of a general jury verdict, whether the conduct underlying the defendant's convictions "was based on a theory that potentially violated [the d]efendant's double jeopardy rights").

**{27}** Turning to the district court's findings of fact, as Defendant points out, the court explicitly relied on the facts underlying Defendant's careless driving conviction to find Defendant guilty of DUI. Specifically, in support of its determination that Defendant drove "in a careless, inattentive or imprudent manner," as required for careless driving, *see* § 66-8-114(B); UJI 14-4505(2), the district court found, "Defendant left the traveled portion of the roadway when he struck or almost struck . . . Montoya," "caus[ing] . . . Montoya to fall off of his bicycle onto the roadway." The district court relied on these same facts to determine that Defendant was impaired to the slightest degree, *see* § 66-8-102(A); UJI 14-4501(2), finding, "Defendant had operated his vehicle in a careless manner, left the travel[]ed portion of the roadway, and struck a cyclist or at least came so close as to cause the cyclist to fall from his bicycle onto the road."[2] Because this single moment in time—Defendant's poor driving involving Montoya—was used to prove both careless driving and DUI, we conclude that the conduct underlying the convictions was unitary.[3] *See State v. Silvas*, 2015-NMSC-006, ¶ 10, 343 P.3d 616 (providing that conduct was unitary when "[t]he [s]tate used evidence of [a] single moment in time to prove *both* [charged offenses]"); *cf. State v. Gonzales*, 2019-NMCA-036, ¶ 21, 444 P.3d

---

[2]We observe that the district court also cited Defendant's poor performance on the walk-and-turn test as support for its determination that Defendant was driving impaired. The court made clear, however, that it was determining guilt "based on the totality of the . . . circumstances," and, as a result, it convicted Defendant of DUI based at least in part on Defendant's poor driving involving Montoya, which served as the sole basis for the careless driving conviction. *See State v. Serrato*, 2021-NMCA-027, ¶ 26, 493 P.3d 383 (providing that "[t]he conduct underlying [the d]efendant's convictions . . . is unitary because there are no independent factual bases to support each offense").

[3]In an attempt to avoid this result, the State argues that Defendant's conduct was not unitary because the offense of DUI was completed as soon as Defendant began driving "even though the fact of his intoxication and impairment was not discovered until later." The State, however, cites no published authority applying the completed offense doctrine to the crime of DUI, in general, and cites no authority—published or otherwise—applying the completed offense doctrine to the crime of DUI *impaired to the slightest degree*, in particular. *See Vigil-Giron*, 2014-NMCA-069, ¶ 60. Nor does the State cogently argue why this doctrine ought to apply to DUI impaired to the slightest degree. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be"). Regardless, the State ignores the particular circumstances of this case—i.e., that the district court explicitly based its convictions for careless driving and DUI on unitary conduct.

1064 (presuming unitary conduct where "the [s]tate explicitly directed the jury to consider the same conduct to support [the d]efendant's [two] convictions").

## B.      Legislative Intent

**{28}**      When conduct is unitary, we must consider, under the second *Swafford* prong, "whether the Legislature intended to permit multiple punishments for the charged crimes." *See State v. Lorenzo*, 2024-NMSC-003, ¶ 13, 545 P.3d 1156 (internal quotation marks and citation omitted). "When, as here, the statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299 . . . (1932), to determine whether each provision requires proof of a fact that the other does not." *State v. Branch*, 2018-NMCA-031, ¶ 24, 417 P.3d 1141. If all elements of one statute are "subsumed within the other, then the analysis ends and the statutes are considered the same for double jeopardy purposes." *Silvas*, 2015-NMSC-006, ¶ 12; *see Swafford*, 1991-NMSC-043, ¶ 30 (stating that when the statutes are the same under the legislative intent prong, "punishment cannot be had for both").

**{29}**      When dealing with statutes that are "vague and unspecific" or "written with many alternatives," we apply a modified version of the *Blockburger* test. *State v. Gutierrez*, 2011-NMSC-024, ¶ 59, 150 N.M. 232, 258 P.3d 1024 (emphasis, internal quotation marks, and citation omitted). The modified *Blockburger* test is appropriate where a statute's "generic terms make it possible for numerous forms of conduct to qualify as the requisite actus reus element of the statute." *State v. Luna*, 2018-NMCA-025, ¶ 14, 458 P.3d 457. Because "there are innumerable ways in which a person might drive that would violate" the careless driving statute, we apply the modified *Blockburger* test to the offense of careless driving. *See Gonzales*, 2019-NMCA-036, ¶ 23 (applying the modified *Blockburger* test to careless driving). Likewise, because there are innumerable ways in which a person might be "less able to the slightest degree . . . to exercise the clear judgment and steady hand necessary to handle a vehicle with safety" as a result of drinking alcohol, UJI 14-4501(2), we apply the modified *Blockburger* test to the offense of DUI, impaired to the slightest degree.[4] *See Luna*, 2018-NMCA-025, ¶ 14 (applying modified *Blockburger* where the "generic terms [of the statute] make it possible for numerous forms of conduct to qualify as the requisite actus reus element of the statute"); *see also Swick*, 2012-NMSC-018, ¶ 25 (applying the modified *Blockburger* analysis to the attempted murder statute because many forms of conduct could satisfy the necessary elements).

---

[4]The State incorrectly asserts that if either the strict-elements *Blockburger* test or the modified *Blockburger* test is met in this case, then a presumption arises that the Legislature intended to permit multiple punishments. *See Begaye*, 2023-NMSC-015, ¶ 23 (providing that "it is improper to apply the strict-elements *Blockburger* test in a case where the statute is vague or written in the alternative and that such an application renders the conclusion unreliable" (alteration, internal quotation marks, and citation omitted)). The State then undertakes only a strict-elements *Blockburger* test. Because we hold that the modified *Blockburger* test is the appropriate test to use in this case, the State's strict-elements argument is of no assistance to our analysis. *See id*.

**{30}**     Under the modified *Blockburger* analysis, "we no longer apply a strict elements test in the abstract;" instead, we "identify the specific criminal cause of action for which the defendant was convicted, filling in the case-specific meaning of generic terms in the statute when necessary." *Branch*, 2018-NMCA-031, ¶ 25. In the typical case—again, where the convictions are the result of guilty verdicts and the factual bases for the convictions are unknown because the fact finder issues general verdicts—we look to the state's legal theory of the case (as evidenced by, inter alia, the charging document, jury instructions, testimony, opening statements, and closing arguments), *see Begaye*, 2023-NMSC-015, ¶ 24, "to identify the specific criminal cause of action for which the defendant was convicted," *see Branch*, 2018-NMCA-031, ¶ 25. *See also Begaye*, 2023-NMSC-015, ¶ 28 (explaining that "in ascertaining what the state's theory is, th[e appellate c]ourt is attempting to discern whether the same *evidence* supported a defendant's convictions under both statutes" (internal quotation marks and citation omitted)). To reiterate, the district court in this case made extensive findings of fact to support Defendant's convictions. From these findings, we can determine the specific criminal cause of action for which Defendant was convicted and whether the careless driving offense is subsumed in the DUI, impaired to the slightest degree, offense. *See State v. Porter*, 2020-NMSC-020, ¶ 21, 476 P.3d 1201 (providing that, to determine whether one offense subsumes another, we must "ascertain the offenses for which [the d]efendant was convicted and punished").

**{31}**     Defendant contends, "[T]he district court's findings are clear [that Defendant's] careless driving was specifically subsumed within the crime of [DUI]." We agree. As noted, the district court relied on Defendant's poor driving involving Montoya as the basis for both careless driving and DUI. According to the district court's findings, Defendant drove "in a careless, inattentive or imprudent manner," § 66-8-114(B) (careless driving), when he left the roadway and struck, or nearly struck, Montoya. Likewise, based on this same driving conduct, the district court determined that Defendant was "less able to the slightest degree . . . to handle a vehicle with safety" and therefore was impaired, *see* UJI 14-4501(2) (DUI, impaired to the slightest degree). Thus, the district court utilized the same exact evidence to support the *careless, inattentive, or imprudent driving* element of careless driving as it did to support the *impairment* element of DUI. *See Begaye*, 2023-NMSC-015, ¶¶ 24, 35 (concluding the legislative intent prong of the modified *Blockburger* analysis was met where the state used the same evidence to support elements of the two offenses and the elements of one offense were subsumed within the other). Accordingly, in light of the district court's findings, the elements of careless driving were subsumed within the elements of DUI and Defendant's conviction for careless driving must be vacated.[5] *See id.*; *State v. Nieto*, 2023-NMCA-072, ¶ 9, 536 P.3d 534 ("If the same evidence supports both convictions, double jeopardy is violated and the lesser offense must be vacated.").

---

[5]Careless driving, when viewed in the abstract, requires proof that the operation of the motor vehicle occurred *on a highway*, § 66-8-114(A), which DUI does not, *see* § 66-8-102(A). There, however, is no dispute in this case that Defendant's driving occurred on a highway; therefore, as applied in this case, careless driving does not require proof of any fact not contained in DUI. *See Gonzales*, 2019-NMCA-036, ¶ 24 (reaching similar conclusion when examining careless driving and aggravated fleeing).

**CONCLUSION**

**{32}** For the foregoing reasons, we reverse Defendant's conviction for careless driving and remand to the district court to vacate the same. We otherwise affirm.

**{33}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**KATHERINE A. WRAY, Judge**