1999-NMCA-082

984 P.2d 782

**In the Matter of the ESTATE OF Albino BACA, deceased.**

**David Chavez, Petitioner–Appellee,**

v.

**Eloisa Baca, Personal Representative, Respondent–Appellant.**

**No. 18,866.**

Court of Appeals of New Mexico.

May 10, 1999.

Thomas B. Catron, III, Beverly A. Van Soelen, Bryan P. Biedscheid, Catron, Catron & Sawtell, P.A., Santa Fe, for Appellant.

John P. Hays, Cassutt, Hays & Friedman, P.A., Santa Fe, for Appellee.

*OPINION*

BUSTAMANTE, Judge.

{1} David Chavez (Petitioner) filed a claim against the estate of Albino Baca (Decedent) seeking specific performance of an oral agreement to sell real property, or, in the alternative, restitution and quantum meruit damages. The district court refused specific performance but awarded damages against the estate under a quantum meruit theory. Concluding that Petitioner's claim is barred by the New Mexico Probate Code limitations period of NMSA 1978, § 45-3-108(A)(4) (1995), we reverse.

*FACTS*

{2} Decedent was Petitioner's uncle. Decedent owned 641 acres of ranch land in San Miguel County, and in addition had a lease with the State for grazing rights on an additional 1200 acres that were contiguous to the 641 acres. In 1989 Decedent and Petitioner entered into an informal partnership to run cattle on the 641 acres of fee land and the 1200 acres of lease land. The entire 1841 acres were treated as one parcel for the purpose of running the cattle. Decedent paid for the cattle, while Petitioner was responsible for purchasing, transporting, and taking care of the cattle, and for maintaining the ranch.

{3} In July 1989, Decedent was in failing health. At a meeting between Decedent and his wife, Eloisa Baca, and Petitioner and his wife, Decedent gave Petitioner his lease interest in the state-owned grazing land. He also gave Petitioner his cattle brand card and asked him to make arrangements to transfer the brand. In addition, Decedent gave Petitioner the cattle they had acquired and offered to sell Petitioner the 641 acres of fee land for $18,000. The only other term of the sale the parties discussed was that Petitioner would make a down payment of whatever profits he realized from the sale of the cattle. The parties did not discuss how or when Petitioner would pay the remainder of the money, nor did the parties prepare any written documentation memorializing the agreement.

{4} After Decedent's death in August 1989, Petitioner sold the cattle. In September 1989, Petitioner gave Mrs. Baca $4560, the proceeds of the sale. At that time, Mrs. Baca transferred to Petitioner documentation evidencing that Petitioner was then the owner of Decedent's cattle brand. Over the next few months, Petitioner contacted Mrs. Baca and attempted to discuss finalizing the sale and transfer of the 641 acres. Mrs. Baca was noncommittal or nonresponsive, and the district court found that she "put him off." About six months after Decedent's death, Petitioner began calling Mrs. Baca less frequently.

{5} Petitioner entered into a partnership with his brother in 1990 and continued to run cattle on the ranch, including the fee land. Petitioner and his brother spent money maintaining the ranch's fences and dredging stock tanks. In 1992 the partnership between the brothers ran into financial difficulty and eventually dissolved. Between 1990 and 1995 Petitioner made the lease payments on the state grazing lease.

{6} In July 1995, Petitioner met with Decedent's stepson (Mrs. Baca's son from a previous marriage) to discuss finalizing the sale of the 641 acres. The stepson offered to sell Petitioner the land for fair market value. At about the same time, Mrs. Baca entered into a written agreement with Petitioner's brother to sell him an option to buy the land.

{7} In September 1995, Mrs. Baca filed a petition for an adjudication of intestacy and appointment of a personal representative. Mrs. Baca published notice of the proceeding in a local newspaper, and on October 6, 1995, the district court entered an order declaring that Decedent died intestate and appointing Mrs. Baca as personal representative of Decedent's estate. The order also named Mrs. Baca sole heir of Decedent's estate, and as such, declared her the sole owner of Decedent's separate property, which included the 641 acres of fee land. Thereafter, on October 26, 1995, Petitioner filed a claim against the estate requesting enforcement of the oral contract. Mrs. Baca filed a notice of disallowance of Petitioner's claim. On January 16, 1996, Petitioner filed a "Petition for Allowance of Claim" against the estate and Mrs. Baca, in her capacity as personal representative, pursuant to NMSA 1978, § 45-3-

806(A) (1993), requesting enforcement of the contract, return of the down payment, or restitution based on quantum meruit.

{8} In answer to the Petition, Mrs. Baca and the estate asserted, among other defenses, that any of several statutes of limitation barred Petitioner's claim. Specifically, the answer cited Section 45–3–108(A)(4); NMSA 1978, § 45–3–803(A) (1993) (limiting creditor's claims against an estate); and NMSA 1978, § 37–1–4 (1980) (limitations period for claims based on unwritten contract). The estate thereafter filed a motion for summary judgment on Petitioner's claim arguing that these statutes of limitation barred Petitioner's claim. The district court denied the motion for summary judgment. The estate sought reconsideration, arguing again that the claim was time barred. The district court reserved judgment on the motion to reconsider and proceeded to trial.

{9} After an evidentiary hearing, the district court found that Petitioner had "adequately established an oral contract by Albino Baca to convey the 641 acre 'ranch,'" but that essential terms of the contract were missing or ambiguous. The court determined that there was no indication when Petitioner was to pay the balance of the sales price. In addition, it found that Petitioner's conduct in reliance on the sale was itself ambiguous and that the improvements to the land were not significant. The court concluded that the Statute of Frauds precluded Petitioner from receiving specific performance of the land-sale contract.

{10} In its decision, the district court acknowledged that it had withheld determination of the statute of limitations issue pending trial. The district court deemed the limitations issue "academic" in light of the fact that Petitioner's specific performance claim failed on the merits.

{11} Once it determined that there was no limitations issue affecting its ability to act, the district court proceeded to decide that Petitioner was entitled to recover under a theory of quantum meruit and was entitled to restitution in an amount equal to the down payment ($4560), all of the lease payments Petitioner had made between 1990 and 1995 ($5558.27), the amount of property taxes he had paid ($93.18), and his costs for maintaining fences ($300) and for dredging stock tanks ($1753.13) on the property.

*DISCUSSION*

{12} The limitations provisions the estate relies upon are, of course, statutory. Interpretation of statutory language is a matter of law. Our review is therefore de novo. *See State v. Adam M.*, 1998–NMCA–014, ¶ 15, 124 N.M. 505, 953 P.2d 40.

{13} Before reaching the merits, however, we must resolve whether the estate preserved the limitations issue for purposes of appeal. "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked ...." Rule 12–216(A) NMRA 1999. Petitioner asserts that the estate never argued to the district court that Petitioner's alternative claims for quantum meruit and unjust enrichment were subject to or barred by the statutes of limitation listed above. Review of the estate's answer and various motions and memoranda filed in the district court reveal that Petitioner has a colorable, if ultimately unsuccessful, point.

{14} There are six pleadings we review to test Petitioner's assertion. The answer clearly included the three limitations defenses listed above in response to the petition as a whole. The estate's summary judgment motions were much more murky in their presentation. The motions can be read to have targeted the specific performance claim primarily, if not exclusively. In contrast, the estate's "Motion to Dismiss or, in the Alternative, for Reconsideration of Order Denying Summary Judgment" was more global in its approach. In it, the estate asked the district court to "dismiss this lawsuit" on limitations grounds. In its written Closing Argument, the estate addressed Petitioner's "claims" as being barred by limitations, but then responded to "Counts II and III" (the unjust enrichment and quantum meruit claims, respectively) separately on non-limitations grounds. Finally, the estate did not make any limitations arguments in its motion seeking reconsideration of the district court's decision.

{15} The two primary purposes of the preservation requirement are "(1) that the trial court be alerted to the error so that it is given an opportunity to correct the mistake, and (2) that the opposing party be given a fair opportunity to meet the objection." *Gracia v. Bittner*, 120 N.M. 191, 195, 900 P.2d 351, 355 (Ct.App.1995). We do not apply the preservation requirement in an "unduly technical manner." *Id.* We hold that the estate's limitations defenses were preserved as to Petitioner's monetary claims. The defenses were clearly aimed at the entire claim made in the original Petition. While the estate could have more artfully articulated its position, it is clear that the estate presented and pursued the defenses.

{16} Under these circumstances, we believe that the limitations defense was adequately preserved. Our recent decision in *Quintana v. Baca*, 1999–NMCA–017, ¶ 12, 126 N.M. 679, 974 P.2d 173, supports this result. There, as here, the appellate issue was not brought to the trial court's attention as clearly as it might have been. However, in this case, as in *Quintana*, the appellate issue was generally brought to the trial court's attention, including the specific statutory provision upon which we rely. In both cases, the issue is a legal one, and thus the appellee is not prejudiced by any lack of opportunity to develop the facts. Therefore, we determine to address the merits of the limitations defense.

{17} Turning to the merits, we start by emphasizing that one of the primary purposes of New Mexico's Uniform Probate Code (Probate Code), NMSA 1978, §§ 45–1–101 to 45–7–612 (1975, as amended through 1998), "is to promote and facilitate the speedy administration and closing of estates." *Corlett v. Smith*, 106 N.M. 207, 210, 740 P.2d 1191, 1194 (Ct.App.1987); *see also* § 45–1–102(B)(3). Consistent with this purpose, the Probate Code provides:

No informal probate or appointment proceeding or formal testacy or appointment proceeding, other than a proceeding to probate a will previously probated at the testator's domicile or appointment proceedings relating to an estate in which there has been a prior appointment, may

be commenced more than three years after the decedent's death . . . .

Section 45–3–108(A). The breadth of this three-year time limit is apparent on its face; it applies to virtually every probate or appointment proceeding, both formal and informal.

{18} The three-year time limit of Section 45–3–108(A) is subject to several exceptions. Most notably for purposes of this case, the three-year time limit "do[es] not apply to proceedings to . . . determine heirs of an intestate." Section 45–3–108(B). And,

an informal appointment or a formal testacy or appointment proceeding may be commenced thereafter if no proceedings concerning the succession or estate administration has occurred within the three-year period after the decedent's death, but the personal representative has no right to possess estate assets as provided in Section 45–3–709 NMSA 1978 beyond that necessary to confirm title thereto in the successors to the estate *and claims other than expenses of administration may not be presented against the state.*

Section 45–3–108(A)(4) (emphasis added).

{19} Here, Mrs. Baca sought a formal adjudication of intestacy and appointment of a personal representative more than six years after Decedent passed away, long past the three-year limit of Section 45–3–108(A). *See* §§ 45–3–402, –301. Were it not for the fact that the petition satisfied the exceptions of Sections 45–3–108(A)(4) and 45–3–108(B), Mrs. Baca would have been precluded from seeking formal appointment at all. None of the other exceptions to the three-year limitations period apply in this case. *See* § 45–3–108(A)(1), (2), (3) & (5).

{20} The exceptions also define the scope of the proceeding, however. Reading the plain language of these provisions "directly and without nuance," *Bajart v. University of New Mexico*, 1999-NMCA-064, 127 N.M. 311, 980 P.2d 94 (Ct.App.1999), it is clear that all Mrs. Baca—or anyone else—could seek was a determination of heirs and/or appointment of a personal representative for the limited purposes of confirming title to property or

handling claims for expenses of administration. *See* § 45–3–108(A)(4), (B).

◼ {21} Petitioner sought approval of a claim affecting property passing to the Decedent's heirs, or alternatively for money damages. These types of claims are beyond the scope of confirming titles or dealing with expenses of administration. We therefore hold that the district court erred by failing to rule that Petitioner's claim was barred by Section 45–3–108(A)(4).

{22} Perhaps because of its clarity, there is little case law interpreting this provision of the Uniform Probate Code. The limited body of case law supports our position, however. For example, our holding here is similar to that in *In re Estate of Taylor*, 207 Mont. 400, 675 P.2d 944 (1984). In *Estate of Taylor*, the alleged residuary legatee and devisee under a purported will petitioned to have the will probated more than seven and one-half years after the death of the decedent, claiming that under the will he and his wife were entitled to virtually the entire estate. *See id.* at 944–45. The decedent's widow failed to produce the will, claiming that the decedent had burned it prior to his death. *See id.* at 945. She also asserted that under the three-year limitation of Montana Code Annotated, § 72–3–122 (1997) (which is identical to New Mexico's Section 45–3–108), the petitioner was precluded from having the will probated. *See Estate of Taylor*, 675 P.2d at 945. In response, the petitioner argued that the widow should be estopped from asserting the three-year limitation. *See id.* at 944–45.

{23} The Montana district court agreed with the widow, concluding "that the three-year statute of limitations in the probate code created a final presumption of intestacy barring a [late-filed] petition for probate." *Id.* at 945. The Montana Supreme Court affirmed. *See id.* In doing so the court observed: "The statute is taken directly from the Uniform Probate Code, Section 3–108. It establishes a basic limitation of three years for determination of whether a decedent left a will, to commence proceedings to prove the same, and to commence proceedings to administer the estate thereunder." *Id.* Moreover, after noting the purposes of

Montana's Uniform Probate Code, the court stated:

Montana's Uniform Probate Code establishes a strong public policy to administer estates of decedents expeditiously and without unreasonable delay. Such public policy would be rendered meaningless and illusory if personal agreements and disputes between persons involved in estate administration could be litigated by raising estoppel as a bar to time limitations in the probate code many years later. If such were permissible, there would be no finality to administration and distribution of estates. The rights of third person distributees of estate assets could be affected or compromised many years later.

*Id.* at 946; *accord In re Estate of Wood,* 147 Ariz. 366, 710 P.2d 476, 478 (Ct.App.1985). We see no reason to construe Section 45–3–108 any differently.

{24} As our holding suggests, an estate "may be settled through inaction and passage of time." 1 *Uniform Probate Code Practice Manual* 189 (Richard V. Wellman ed., 2d ed.1977). The Probate Code requires claimants against an estate to pursue recovery in the context of an administration proceeding. "Hence, once administration is barred, creditors are also barred." *Id.* This result is not in any sense unfair or draconian. Our holding is in keeping with the policy and purpose of the Probate Code to promote the speedy and efficient liquidation and distribution of estates, while allowing claimants adequate time to protect themselves.

{25} The three-year limitation period puts the burden on potential claimants to pursue their claims themselves if it appears proceedings to settle an estate are not forthcoming. It is true that administration is necessary for the presentation of claims, *see* § 45–3–104, which in turn generally requires appointment of a personal representative, *see* § 45–3–103. But if otherwise qualified, *see* § 45–3–601, interested persons can petition to have themselves appointed personal representative, *see* § 45–3–203(A)(6). " '[I]nterested person[s]' include[ ] heirs, devisees, children, spouses, creditors, beneficiaries and *any others having a property right in or claim against ... the estate of a decedent*

**540**

. . . ." Section 45–1–201(A)(23) (emphasis added).

{26} For the foregoing reasons, we reverse. Given our holding, we need not address the applicability of the other limitations statutes the parties argue.

{27} **IT IS SO ORDERED.**

PICKARD, C.J., concurs.

BOSSON, Judge (specially concurring).

BOSSON, Judge (specially concurring).

{28} I concur in the opinion of the majority with respect to the statute of limitations as it applies to Petitioner's claim against the estate. However, everything Judge Encinias found below would support a claim against Mrs. Baca individually for restitution and quantum meruit. After all, the essence of the judgment below is that Mrs. Baca should not be able to retain unfairly these monies given her by Petitioner, nor profit unfairly from Petitioner's efforts. Those findings remain today, although their efficacy against the estate has been neutralized by the affirmative defense of the statute of limitations. Common principles of issue preclusion may make those same findings binding on Mrs. Baca in any future claim against her individually thereby facilitating a judgment against her. It is fair to say that Mrs. Baca's assertion of her statute of limitations defense against Petitioner's restitution and quantum meruit claims was at best ambiguous, and she may have misled Petitioner into not asserting such a claim earlier against Mrs. Baca individually. Estoppel may be appropriate for consideration in any future litigation with respect to whatever statute of limitations defense Mrs. Baca may assert in her own defense.