The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: December 24, 2025

**No. A-1-CA-41817**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellant,

v.

**GABRIEL ASHLEY,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Louis E. DePauli, Jr., District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Solicitor General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Velarde, Assistant Appellate Defender
Albuquerque, NM

for Appellee

**OPINION**

**YOHALEM, Judge.**

{1}     This appeal concerns the procedure that the district court is required to follow when the State files a motion to revoke the probation of a sex offender who has served nine years of supervised probation without having been provided the duration review hearings mandated by NMSA 1978, Section 31-20-5.2(B) (2003). The State contends on appeal that the district court erred in summarily discharging Defendant from probation and dismissing the State's motion to revoke probation. We agree with the State that summarily discharging Defendant from probation and summarily dismissing the State's motion to revoke probation was error. We, therefore, reverse and remand for further proceedings. On remand, the district court must hold the post-deprivation due process hearing required by the due process clauses of both the New Mexico and United States Constitutions. The due process hearing must be consistent with the procedures adopted by this Court in *State v. Cooley*, 2023-NMCA-089, ¶ 42, 538 P.3d 491, as clarified by our Supreme Court in its recent decision in *Aragon v. Martinez*, 2025-NMSC-046, ¶ 44, ___ P.3d ___, in the context of parolees' right to duration review hearings under NMSA 1978, Section 31-21-10.1(C) (2007). Only if the district court determines at the conclusion of the post-deprivation due process hearing that Defendant would not have been discharged from probation prior to the

filing of the State's motion to revoke Defendant's probation should the court proceed to consider the State's motion.

## BACKGROUND

### Conviction and Sentencing as a Sex Offender

{2} In October 2010, Defendant Gabriel Ashley was convicted of criminal sexual contact of a minor in the second degree (child under 13) (CSCM), contrary to NMSA 1978, Section 30-9-13(B) (2003). Defendant was sentenced as a sex offender under Section 31-20-5.2(A), which requires the district court to "include a provision in the judgment and sentence that specifically requires the sex offender to serve an indeterminate period of supervised probation for a period of not less than five years and not in excess of twenty years." Defendant was sentenced to fifteen years of incarceration, to be followed by an indeterminate period of probation up to twenty years. All but three years of incarceration were suspended.

{3} Defendant's probation began on December 8, 2013. The conditions of probation imposed by the district court required Defendant to refrain from drinking alcohol, from using or possessing controlled substances, from possessing weapons, from violating any laws, and required he successfully complete sex offender treatment and comply with other reasonable conditions imposed by the Probation and Parole Division of the New Mexico Department of Corrections.

**Statutory Requirements for Duration Review Hearings**

{4}     When a sex offender has been on probation for five years, Section 31-20-5.2(B) requires the district court to conduct a probation duration review hearing. *See Cooley*, 2023-NMCA-089, ¶¶ 24-25 (holding that the deadlines set by Section 31-20-5.2(B) for duration review hearings are mandatory). At the duration review hearing, the state "bear[s] the burden of proving to a reasonable certainty that the sex offender should remain on probation." Section 31-20-5.2(B). If the State fails to meet its burden, the probation must end. Section 31-20-5.2(A), (B).

{5}     The district court is directed to consider and weigh a number of factors in deciding whether the evidence supports continuing probation. These factors include the nature of the offense, the nature of any prior sex offenses, rehabilitation efforts engaged in, including treatment programs, the danger to the community posed by the sex offender, and any risk and needs assessment regarding the offender. Section 31-20-5.2(A)(1)-(5); *see State v. Chavez*, 2019-NMCA-068, ¶ 16, 451 P.3d 115 (holding that the statutory criteria in Subsection A of Section 31-20-5.2 are intended to guide the district court's exercise of its discretion in deciding whether a sex offender should remain on probation following a duration review hearing). As already noted, if the state is unable to prove to a reasonable certainty that the sex offender should remain on probation, the probationer must be discharged from probation. Section 31-20-5.2(A).

{6}     After the initial hearing at five years, duration-review hearings must be held at two-and-one-half year intervals as long as the defendant remains on probation. Section 31-20-5.2(B). Section 31-20-5.2(B) states:

> A district court shall review the terms and conditions of a sex offender's supervised probation at two and one-half year intervals. When a sex offender has served the initial five years of supervised probation, the district court shall also review the duration of the sex offender's supervised probation at two and one-half year intervals. When a sex offender has served the initial five years of supervised probation, at each review hearing the state shall bear the burden of proving to a reasonable certainty that the sex offender should remain on probation.

Section 31-20-5.2(A) supplements this provision by providing, in relevant part:

> A sex offender's period of supervised probation may be for a period of less than twenty years if, at a review hearing provided for in Subsection B of this section, the state is unable to prove that the sex offender should remain on probation.

{7}     These statutory terms required an initial probation duration review hearing for Defendant in December 2018, five years after his supervised probation began in 2013,[1] and, assuming the State met its burden and Defendant remained on probation after that initial hearing, a second duration review hearing two and one-half years later in June 2021. Under the terms of Section 31-20-5.2(B), in other words,

---

[1]There was some confusion in the district court about the date Defendant's initial duration review hearing was due. Defendant claimed in the district court that the five-year hearing should have been held in December 2015, five years after sentencing. By statute, however, the five years runs "[w]hen a sex offender has served the initial five years of supervised probation." Section 31-20-5.2(B). It appears from the record that Defendant's supervised probation began on December 8, 2013. We therefore rely on that date to set the time for the initial hearing.

4

Defendant should have had two duration review hearings with the opportunity at each hearing for discharge from probation, prior to his arrest for a probation violation on October 31, 2023.

**District Court Probation Violation Hearings**

{8}      While still on probation, Defendant was arrested for a violation of the conditions of his probation and taken into state custody on October 31, 2023. A notification of his arrest was filed with the district court on November 6, 2023, along with a major violation report prepared by Defendant's probation officer. The district court was informed that Defendant had violated the conditions of his probation by (1) possessing adult pornography on his cell phone, (2) failing to submit truthful reports about viewing this pornography to his probation officer, and (3) failing to successfully complete supervision and treatment. None of the three probation violations charged was a criminal offense under New Mexico law.

{9}      Prior to the court filing reporting Defendant's violation of the conditions of his probation on November 6, 2023, there was no activity on the district court's docket since Defendant's sentencing in August 2011 with the exception of the entry of an amended judgment and sentence in August 2012. Upon receiving the notice of Defendant's arrest and the probation officer's violation report, the district court scheduled a status hearing. A public defender promptly entered an appearance for Defendant. On November 9, 2023, the State filed a motion to revoke Defendant's

probation, attaching the probation officer's report. The district court rescheduled the initial status hearing, setting instead a probation violation arraignment for November 20, 2023.

{10} At the arraignment, Defendant denied the probation violations. The district court sua sponte noted that the court record showed that nothing had come before the court since Defendant's sentencing more than ten years earlier. The court expressed concern that despite over nine years that Defendant had been on probation, there had been no probation duration review hearing under Section 31-20-5.2(B). The court scheduled an adjudicatory hearing on the State's motion to revoke probation for December 11, 2023, and released Defendant from custody pending that hearing.

{11} At the December 11, 2023 hearing, Defendant argued at the outset of the hearing that the duration review hearing requirements of Section 31-20-5.2(B) were jurisdictional, and that the failure to provide Defendant timely duration review hearings meant that the district court no longer had jurisdiction to hear the State's motion to revoke Defendant's probation. The district court asked both parties to brief the jurisdictional question raised by Defendant and advise the court on the appropriate remedy for the missed duration review hearings if the court retained jurisdiction, directing the parties to this Court's decision in *Cooley*, 2023-NMCA-089, decided only three months earlier.

**{12}** On December 19, 2023, Defendant filed a motion to dismiss pursuant to Section 31-20-5.2, and the due process clauses of the United States and New Mexico Constitutions, based on the State's failure to conduct either of the two mandatory duration review hearings required by Section 31-20-5.2(B) during Defendant's probation. Defendant abandoned his jurisdictional challenge in light of *Cooley*'s holding that the district court retained jurisdiction despite the State's failure to conduct a duration review hearing. *See* 2023-NMCA-089, ¶¶ 24, 29. Noting that no duration review hearing had been requested by the State and that none had been conducted, Defendant claimed that such a "grave violation" of his due process rights justified "a dismissal of the probation violation and granting [D]efendant a satisfactory discharge from probation," again citing *Cooley*.

**{13}** In response, the State argued that because *Cooley* held that a district court retains jurisdiction over a probationer despite the missed deadlines for probation duration review hearings, and because a post-deprivation due process hearing provides sufficient procedural due process, even if long delayed, the district court should deny Defendant's motion to dismiss the State's motion to revoke probation, and should proceed with an adjudicatory hearing to revoke probation. The State suggested that the remedy for Defendant's two delayed duration review hearings could wait until after the district court decided whether to revoke probation.

{14} At the hearing on January 5, 2024, on Defendant's motion to dismiss, both parties told the district court that they were relying on this Court's decision in *Cooley* and that the court should rely on that decision. The district court asked the parties whether the statement of facts in Defendant's motion to dismiss was undisputed. The State agreed that the facts listed in Defendant's motion were undisputed and the district court could rely on them. The undisputed facts were limited to the following: the date Defendant's probation began, the dates when duration review hearings were required by Section 31-20-5.2(B), and the fact that neither of the two required duration review hearings had been held. There was no evidence presented about Defendant's progress toward rehabilitation, his danger to the community, or about any prejudice to Defendant that was caused by the denial of two duration review hearings. The district court took the matter under advisement, stating it would rely on the undisputed facts, the parties' arguments, and this Court's opinion in *Cooley*.

{15} On January 18, 2024, the district court granted Defendant's motion to summarily discharge Defendant from probation and to dismiss the State's motion to revoke probation. The district court found that (1) Defendant was entitled to a periodic review of his probation on the timelines set by Section 31-20-5.2(B); (2) Defendant has a "significant liberty interest in release from probation" unless the State meets its burden at duration review hearings; and (3) delays in duration review hearings should not be taken lightly because long delays "create significant risk that

8

a probationer will be continued on probation erroneously." The district court concluded that because the State failed to conduct a duration review hearing during the more than nine years Defendant was on probation, and had not requested an immediate duration review hearing in the pending proceeding, the State "failed to meet its burden necessary to extend Defendant's probation," and that, therefore, Defendant should be discharged from probation. The district court's order does not address the factors listed in Section 31-20-5.2(A), nor does it address whether there was specific prejudice to Defendant from the long delay or denial of the two duration review hearings. The district court had no evidence before it other than the stipulated facts contained in Defendant's motion to dismiss. The State appealed.

**DISCUSSION**

{16}    In this case, the parties debate the appropriate procedure required by statute and by due process when the State filed a motion to revoke the probation of Defendant nine years after he began serving an indeterminate period of probation, when no duration review hearing had been held during that time, as required by Section 31-20-5.2(B). The district court relied on the denial of two mandatory duration review hearings, together with the State's failure to request an immediate duration review hearing to remedy that denial, as grounds for summarily discharging Defendant from probation and dismissing the State's motion to revoke probation.

9

{17}     Statutory interpretation and due process are issues of law that this Court reviews de novo. *See Nguyen v. Bui*, 2023-NMSC-020, ¶ 14, 536 P.3d 482 (stating that appellate courts review questions of statutory interpretation de novo); *Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 31, 137 N.M. 161, 108 P.3d 1019 (stating that appellate courts review due process questions de novo).

{18}     We begin by reviewing two seminal decisions relevant to the appropriate remedy for missed duration review hearings—this Court's decision in *Cooley* regarding the remedy for denial of the timely *probation* duration review hearings required by Section 31-20-5.2(B), and our Supreme Court's decision in *Aragon* regarding the denial of the timely *parole* duration review hearings required by Section 31-21-10.1(C).

{19}     We then address Defendant's argument that the State failed to request the appropriate remedy in the district court, and, therefore, failed to preserve the issues it now raises on appeal. We conclude that preservation, although imperfect, was adequate to satisfy the purposes of the preservation rule and allow this Court to reach the merits of this appeal.

{20}     We next address Defendant's contention that the State's failure to request an immediate due process hearing prior to any hearing on the State's motion to revoke probation distinguishes this case from *Cooley*, and supports the district court's

decision to summarily discharge Defendant from probation. Rejecting Defendant's claim that summary discharge is authorized by *Cooley* under these facts, we next turn to the post-deprivation remedial procedures our precedent requires the district court to provide. We first consider whether the applicable statutes, *see* § 31-20-5.2 (addressing sex offender probationers); § 31-21-10.1(C) (addressing sex offender parolees), are sufficiently similar such that this Court can and should rely on the additional clarification provided by our Supreme Court for parolees in *Aragon.* Concluding that they are—the due process analyses in both contexts is virtually identical—and that precedent supports the application of the same due process protections to probationers and parolees, we remand for the district court to conduct hearings consistent with the mandates of *Aragon* and *Cooley*, and to entertain the State's motion to revoke probation only if the court concludes Defendant would not have been discharged prior to the filing of the State's motion.

**I.      The Relevant New Mexico Law: This Court's Decision in *Cooley* and Our Supreme Court's Decision in *Aragon***

{21}      Several months before the State filed its motion to revoke Defendant's probation in this case, this Court decided *Cooley*. *Cooley* addressed Section 31-20-5.2(B)'s requirement for probation duration review hearings and the appropriate procedures when such hearings are unreasonably delayed or denied. *See Cooley*, 2023-NMCA-089, ¶ 2. This Court held in *Cooley* that a probationer has a liberty interest in the opportunity provided by Section 31-20-5.2(B) to be discharged from

11

probation if the state cannot carry its burden at the mandatory duration review hearings provided by statute. *Cooley*, 2023-NMCA-089, ¶ 34. Concluding that the probationers in that case were entitled to post-deprivation procedural due process when their duration review hearings were unreasonably delayed or denied, *id.* ¶ 35, this Court then applied the three factors test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), to determine what procedures are required by due process. *Cooley*, 2023-NMCA-089, ¶ 31. The *Mathews* factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Cooley*, 2023-NMCA-089, ¶ 31 (quoting *Mathews*, 424 U.S. at 335).

{22}    *Cooley* holds that at a post-deprivation due process hearing, the district court must determine whether the probationer was prejudiced by the delay and must endeavor to eliminate that prejudice to the extent possible. *See id.* ¶ 52. Importantly, *Cooley* holds that the district court's consideration of "circumstances such as the delay, cause [of the delay], and missed opportunity when determining whether probation should continue" adequately protects the probationer's liberty interest, even if the duration review hearing is late. *Id.* ¶ 53. This Court left it to the district court's discretion to decide how to evaluate the prejudice to the probationer and what

12

procedural remedy to provide, consistent with due process. *See id. Cooley* plainly held, however, that summary discharge from probation based solely on the delay of the duration review hearing is not permitted. *Id.* ¶¶ 29-30.

{23}     While this case was on appeal, our Supreme Court decided *Aragon*. *Aragon* addressed the requirement for periodic duration review hearings in Section 31-21-10.1(C), which applies to sex offenders sentenced to an indeterminate period of parole, rather than probation. *See Aragon*, 2025-NMSC-046, ¶ 1. Citing *Cooley* with approval, our Supreme Court held that the Legislature created a liberty interest in the opportunity for discharge from parole if the state could not carry its burden at what the Court concluded were mandatory duration review hearings on the timelines set by statute. *Aragon*, 2025-NMSC-046, ¶¶ 2, 31. Our Supreme Court, like this Court in *Cooley*, turned to the *Mathews* test to determine the process required if such a hearing is delayed or denied. *Id.* ¶ 34. Our Supreme Court explicitly held that "the absence of a timely duration review hearing does not per se entitle a sex offender parolee to immediate release." *Id.* ¶ 42. *Aragon* agreed with *Cooley* that the denial of a timely duration review hearing could be remedied by a post-deprivation hearing where the parties are given the "opportunity to present evidence in favor of or against release." *Aragon*, 2025-NMSC-046, ¶ 42. As this Court held for probationers, discharge or other appropriate relief is required only if the district court finds

prejudice due to the delay; prejudice is defined as a likelihood that the parolee was erroneously continued on parole. *See id.*; *Cooley*, 2023-NMCA-089, ¶ 38.

{24} Although it adopted the same standards and guidelines for assessing prejudice as *Cooley*, *Aragon* further clarifies the procedure the district court must apply to assess the likelihood that a parolee was prejudiced—i.e., erroneously continued on parole. *See Aragon*, 2025-NMSC-046, ¶ 42. In *Cooley*, we acknowledged that it was inherently prejudicial for the state to rely on evidence that otherwise would not have been available at a timely duration review hearing. 2023-NMCA-089, ¶¶ 37, 52. Our Supreme Court agreed and held that any prejudice attributable to the delay must be minimized by precluding the state "from using evidence supporting continued parole that was not available as of the date of a *timely* hearing." *Aragon*, 2025-NMSC-046, ¶ 42. The Court clarified the procedure on remand: "[E]ach party [must be allowed] to present evidence and arguments to the district court on their respective positions as to whether [the parolee] was prejudiced by the [state]'s failure to hold a hearing or is entitled to release . . . , or other relief, in accordance with standards and guidelines we have set forth herein." *Id.* "In the event a parolee points to the subsequent duration review hearings that *should have been conducted* during the delay period . . . , the [s]tate would be entitled to rebut with additional evidence timely to the relevant date [that the subsequent hearing] should have occurred, as well as with extenuating circumstances contributing to the length of delay." *Id.*

14

*Aragon* also reminded district courts that "remedies for constitutional violations should be narrowly tailored and take into account competing interests." *Id.* (internal quotation marks and citation omitted). With this precedent in mind, we turn to the parties' arguments on appeal, beginning with Defendant's argument that the State failed to preserve its appellate claim of error.

## II. Preservation of the State's Arguments

{25} Defendant argues that the State failed to preserve for our review the argument it now makes on appeal. Although the State, relying on *Cooley*, conceded that the failure to hold a duration review hearing at either five years or seven and one-half years after Defendant began probation denied Defendant due process, Defendant's preservation argument focuses on the State's failure to request the prompt post-deprivation due process hearing it now argues on appeal is required before the district court can decide the State's motion to revoke Defendant's probation. Defendant asks this Court to refuse to consider the State's appeal based on this claimed failure of preservation.

{26} The record shows that the State correctly relied on *Cooley* and referred the district court to *Cooley* as the relevant authority. The State opposed Defendant's request for summary discharge of Defendant from probation and for summary dismissal of the State's motion to revoke probation, the central issues it raises on appeal.

15

{27}     Although we agree that the State failed to argue that the hearing it now seeks should be provided prior to any consideration of its motion to revoke probation, we nonetheless find that the purposes of preservation were substantially served. "[T]he primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue." *Ferebee v. Hume*, 2021-NMCA-012, ¶ 25, 485 P.3d 778 (internal quotation marks and citation omitted). The district court was advised of the specific statutes and precedent now relied on by the State for reversal of the district court's order. The district court stated in its order it relied on the cited statutes and on this Court's decision in *Cooley*. The primary question raised on appeal—whether summary discharge from probation was the appropriate remedy for the violation of Defendant's due process rights—was therefore directly before the district court for decision. The State argued that such a summary discharge would be error, and that the *Cooley* due process procedures were required. The difference in the State's argument on appeal is the State's recognition that those procedures were required *prior* to any consideration of the motion to revoke probation, rather than after.

16

**{28}** Although imperfect, we conclude that the State's argument and citation to authority was sufficient to advise the district court both of the legal theory relevant to this appeal, and to direct the district court to the correct authority. It was also sufficient to provide Defendant, the opposing party, a fair opportunity to respond. We note that neither the State nor Defendant were clear and accurate in their description of the holding of *Cooley* and its application to the circumstances before the district court. Given the fact that the district court was advised of the legal theories now argued on appeal, we find preservation sufficient and exercise our discretion to address the merits of this case. *See Quintana v. Baca*, 1999-NMCA-017, ¶ 12, 126 N.M. 679, 974 P.2d 173.

**III.    Summary Discharge from Probation Is Not the Remedy for Failure to Hold Timely Duration Review Hearings**

**{29}** We now turn to the appropriate remedy owed to Defendant for the two mandatory duration review hearings he was denied during his nine years of probation. The district court held, and Defendant continues to contend on appeal, that the appropriate remedy in this case was summary discharge from probation. Defendant claims that the district court "properly exercised its discretion by implicitly balancing the factors identified by *Cooley*, and applying a remedy explicitly approved by *Cooley*." We do not agree.

**{30}** As already discussed, *Cooley* holds that although an unreasonably long delay in providing a duration review hearing denies a defendant due process, a late

17

duration review hearing with "additional safeguards that require a district court to consider circumstances such as the delay, cause [of the delay], and missed opportunity when determining whether probation should continue would adequately protect [the defendant's] interest." *Cooley*, 2023-NMCA-089, ¶ 53. This Court in *Cooley* noted that consideration of other factors in addition to the delay, the cause of the delay, and the missed opportunity caused by the delay might be necessary to ensure a probationer receives due process "on a case-by-case basis." *Id.* This Court was clear, however, that the balance of the important state interests in protecting the community and in rehabilitating the sex offender, the defendant's important interest in an opportunity for liberty, the risk of an erroneous decision, and the value of additional procedures did not support summary discharge from probation as the remedy for unreasonable delay of a duration review hearing. *Id.* ¶¶ 39, 49, 53. Instead this Court weighed the balance of interests in favor of a remedial hearing, with substitute or additional procedures to account for the risk that probation had been erroneously continued during the delay. *See id.* ¶¶ 36, 45, 52-53. *Cooley* refused to recognize a presumption of prejudice demanding immediate discharge from probation, instead holding that "a new hearing in which the district courts consider those factors [including whether the defendant was prejudiced] would remedy the due process violation." *Id.* ¶¶ 49, 53. This Court's analysis has since been approved by our Supreme Court. *See Aragon*, 2025-NMSC-046, ¶ 42 (requiring a hearing "to

18

allow each party to present evidence and arguments to the district court on their respective positions as to whether [the defendant] was prejudiced by the [p]arole [b]oard's failure to hold a hearing"). As we explain below, our Supreme Court limited the evidence that can be admitted and considered by the district court at such a hearing, precluding the district court "from using evidence supporting continued parole that was not available as of the date of a *timely* hearing." *Id.*

{31} Defendant claims that the State's failure to request an immediate due process hearing prior to the adjudication of its motion to revoke probation justifies the district court's decision to summarily discharge Defendant from probation. We do not agree that the State's failure to make such a request changes the due process analysis in this case. That failure is simply a factor to be considered when the district court weighs the delay, the causes of the delay, its impact on Defendant, and any justification presented by the State for the delay in assessing, at a due process hearing, the likelihood Defendant would have been discharged earlier. *See Cooley*, 2023-NMCA-089, ¶ 53; *see also Aragon*, 2025-NMSC-046, ¶ 42 (allowing the state to present "extenuating circumstances contributing to the length of delay").

**IV.    Aragon's Further Clarification of the Needed Due Process Safeguards Should Be Applied to Probationers**

{32} Both *Cooley* and *Aragon* address the procedures required by due process when a mandatory duration review hearing is denied or unreasonably delayed. In order to determine whether the safeguards articulated by *Aragon* at the post-deprivation

19

hearing should be applied in the context of probation duration review hearings, we consider whether any difference between our probation and parole statutes concerning sex offenders affects the analysis of the due process procedures required when a probationer is denied a timely duration review hearing.

{33}    Although there are some differences between probation and parole, both statutes central to the due process analysis require mandatory timely judicial or quasi-judicial hearings to determine whether a parolee or probationer should remain on probation or parole after the initial five years. *See* § 31-20-5.2(B) (discussing probation); § 31-21-10.1(C) (discussing parole). These statutory provisions are nearly identical.

{34}    Both probationers and parolees alike have been found by federal and our state courts to have a diminished liberty interest that allows the state to provide less due process than it provides to law-abiding citizens. *See State v. Godinez*, 2025-NMSC-005, ¶ 19, 563 P.3d 854 (citing federal authority). Both probationers and parolees nonetheless have been found to have an interest in liberty, and, even though that interest is conditional, to have a right to procedural due process before they are deprived of that interest. *See Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973) (perceiving no "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation"); *Godinez*, 2025-NMSC-005, ¶ 19 (same).

{35}     In the case of duration review hearings, probationers and parolees have been found both by *Cooley* and *Aragon* to have a similar interest in discharge from the conditions that limit their liberty. *See Aragon*, 2025-NMSC-046, ¶ 36 (comparing probationers' liberty interest, recognized in *Cooley*, to parolees' liberty interest). The substantive statutory standards applied at a duration review hearing to determine whether the state has met its burden to continue probation or parole are identical. *Compare* § 31-20-5.2(A), *with* § 31-21-10.1(C). Finally, neither statute specifies any remedy for the failure of the parole board, in the case of parolees, or the district court, in the case of probationers, to timely hold a duration review hearing. *See* §§ 31-21-10.1; 31-20-5.2.

{36}     We conclude that the differences between the sex offender *probation* duration review statute, § 31-20-5.2, and the sex offender *parole* duration review statute, § 31-21-10.1, do not affect the remedy required by due process. We, therefore, adopt the additional direction provided by our Supreme Court in *Aragon* as to the procedures that should be used in a post-deprivation due process hearing and require that the district court on remand to utilize those procedures to supplement the procedures required by Cooley, as explained below. *See Aragon*, 2025-NMSC-046, ¶ 42; *Cooley*, 2023-NMCA-089, ¶¶ 52-53.

## V. Procedures on Remand

{37} We again remind district courts that timely duration review hearings are mandatory. Section 31-20-5.2(B); *see Cooley*, 2023-NMCA-089, ¶ 53 ("We also take this opportunity to remind district courts that duration review hearings are required when a probationer completes five years of probation and periodically afterward."). The State's failure to timely request a hearing does not excuse the failure to timely provide this mandatory hearing.

{38} Because, in this case, at least two of Defendant's mandatory duration review hearings were unreasonably delayed, the district court on remand must conduct a post-deprivation due process hearing, first considering evidence relating to Defendant's conduct prior to December 2018—when he had been on probation five years—to evaluate the likelihood that Defendant would have been discharged from probation but for the delay in the hearing. At such a hearing, the court must consider the factors set forth in Section 31-20-5.2(A)(1)-(5), including the nature of the offense, the nature of any prior sex offenses, rehabilitation efforts engaged in, prior to the time of that hearing, the danger to the community posed by the sex offender if discharged at that time, and any risk and needs assessment regarding the offender at that time, "as well as any extenuating circumstances contributing to the length of delay." *See Aragon*, 025-NMSC-046, ¶ 42; *Cooley*, 2023-NMCA-089, ¶ 44. Importantly, the State is precluded from "using evidence supporting continued

22

parole that was not available as of the date of a *timely* [duration review] hearing." *See Aragon*, 025-NMSC-046, ¶ 42; *see also Cooley*, 2023-NMCA-089, ¶¶ 37, 52. If the district court decides that Defendant likely would have been continued on probation at the first duration review hearing, then the court must expand its due process hearing to allow the parties to present evidence about Defendant's rehabilitation and other relevant factors during the additional two and one-half years that would have passed before the second duration review hearing, thus considering all evidence arising before the seven and one-half year mark. The district court must then again evaluate the likelihood that Defendant would have been discharged after seven and one-half years of probation and discharge Defendant or order other appropriate relief.

{39} Only if the district court determines at the conclusion of the post-deprivation due process hearing that Defendant would still be on probation at the time the State filed its motion to revoke probation must the court then consider whether probation should be revoked pursuant to the State's motion, holding an adjudicatory hearing to decide that motion.

**CONCLUSION**

{40} We reverse and remand to the district court for further proceedings in accordance with this opinion.

{41} **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____
**JENNIFER L. ATTREP, Judge**

_____
**SHAMMARA H. HENDERSON, Judge**